## GRIFFIN *et al.* v. JONES, *et al.*

No. 4177.  Opinion Filed December 8, 1914.

Rehearing Denied January 5, 1915.

(147 Pac. 1024.)

1.  PROCESS—Publication Notice—Affidavit—Sufficiency.  Defendants A. S. Griffin, Chas. A. Sandals and Sterling Oil Company were nonresidents of the state.  Plaintiff caused a publication notice to issue, and published same for the time prescribed by law.  Plaintiff failed to allege in the affidivit filed for the notice for publication any facts showing that defendants could not be served by the exercise of due diligence, or that they were not at the time in the state.  **Held,** that said

affidavit was fatally defective, **Held**, further, that the court obtained no jurisdiction over the person of defendants.

2. **JUDGMENT—Jurisdiction—Publication Notice.** Defendants A. S. Griffin, Chas. A. Sandals, and Sterling Oil Company failed to appear, and they were adjudged in default. The court entered a personal judgment against the two defendants first named for the sum of $19,693.79. Held that, the notice of publication being a nullity, the judgment rendered against said defendants was void.

3. **JUDGMENT—Right to Vacate—Irregularity—Foreclosure of Mortgage.** Plaintiff's cause of action was based upon 2 promissory notes of $1,000 each, which had matured, and another cause of action upon 18 notes of $1,000 each, which were not matured. When the case was called for trial, after evidence had been taken, the court permitted plaintiff to file an amended petition, setting out four additional causes of action, by alleging that 4 of the 18 notes had matured since the filing of the suit, and judgment was rendered in the sum of $6,014.93 on the matured notes, and for $13,678.86 on the notes which were not matured, and decreed the foreclosure of the mortgage lien for the full amount. Held, that this constitutes such irregularity as to authorize the trial court to vacate the judgment upon timely motion filed therefor.

4. **JUDGMENT—Vacation—Grounds—Jurisdictional Defects.** On the 12th day of February, 1912, and after the expiration of the term at which the judgment was rendered, defendants A. S. Griffin, Chas. A. Sandals, and Sterling Oil Company filed their motion to vacate said judgment, assigning therefor the invalidity of the publication notice issued and published, and want of jurisdiction of the court over them. They also assigned various other irregularities in the proceedings, including the allegation that the complaint failed to state a cause of action. The court denied said motion. Held that, assuming said motion contained both jurisdictional and nonjurisdictional grounds, and the filing of same constituted a general appearance, yet, if there were such irregularities in the proceedings affecting defendants' substantial rights, it was the duty of the court to have vacated said judgment.

5. **APPEARANCE—Judgment—Vacation—Defective Service— Effect of General Appearance.** Assuming that defendants, by filing their motion to vacate the judgment, made a general appearance, such appearance waived only the jurisdiction of the court over them, and did not waive any of the irregularities in the proceedings and judgment which deprived them of a substantial right. Upon the hearing of such motion, if it clearly appeared that such irregularities existed, or that the judgment was unjust and inequitable, it was the duty of the court to vacate said judgment and to hear said cause on the merits.

6. **MORTGAGES—Foreclosure—Petition—Acceleration of Indebted-**

ness. The mortgage sought to be foreclosed contained no provision accelerating the immatured indebtedness, or that in default of payment of any one or more of said notes or interest thereon, authorizing plaintiff to foreclose said mortgage. **Held,** that neither the original nor the amended petition stated a cause of action authorizing the foreclosure of the mortgage lien.

7. **APPEAL AND ERROR—Ground for Reversal—Refusal to Vacate Judgment.** Upon a hearing of the petition in error from the order denying the motion to vacate the judgment, it appears from the pleadings and judgment that said judgment was void for want of jurisdiction of the court over defendants, and it further appears that there is such irregularity in the proceedings and judgment complained of as deprived defendants of a substantial right, and it is apparent the judgment is unjust and inequitable; the order of the court denying the motion to vacate constitutes reversible error.

(Syllabus by the Court.)

*Error from District Court, Washington County;*

*R. H. Hudson, Judge.*

Action by James K. Jones, Jr., administrator of the estate of James K. Jones, Sr., deceased, against A. S. Griffin and others. From the judgment, certain defendants bring error. Reversed, with directions.

*Norman Barker* and *B. T. Hainer,* for plaintiffs in error.

*J. P. O'Meara* and *H. H. Montgomery* and *L. G. Owen,* for defendants in error.

RIDDLE, J.   The parties will be designated as they appeared in the trial court. On October 1, 1910, defendants Sandals-Griffin & Co., a copartnership composed of A. S. Griffin and Chas. A. Sandals, executed 20 promissory notes in the sum of $1,000 each, the first of which was payable December 1st, and one to be paid thereafter at the 1st of each month. The notes are dated at Washington, D. C., and payable to the order of James K. Jones, Jr., administrator, at the Commercial National Bank of Washington, D. C., and bear interest at the rate of 8 per cent.

per annum until paid. Defendants executed their certain mortgage in favor of said plaintiff, securing said notes, upon the following described property:

S. E. 1/4 of the S. W. 1/4 and the S. 1/2 of lot 4, containing 21.04 acres, and the northeast 10 acres of lot 4, all in section 19, township 27 N., range 13 E. of the Indian meridian, and containing 71.04 acres, more or less; and the N. W. 1/4 of the S. W. 1/4 of the S. E. 1/4 of section 19, township 27 N., range 13 E. of the Indian meridian, containing 10 acres, more or less; and the S. E. 1/4 of the S. E. 1/4 and the S. 1/2 of the S. W. 1/4 of section 19, township 27 N., range 13 E. of the Indian meridian, containing 70 acres, more or less—all of said lands being situate in Washington county, state of Oklahoma, together with all the tools, appliances, machinery, and other personal property upon said leaseholds and appurtenant to their operation.

The only reference made to the notes in the mortgage is the following provision:

"This mortgage is given to secure the payment of twenty purchase money promissory notes of one thousand dollars ($1,000) each, dated October 1, 1910, and due one each month from one to twenty months from date, interest upon said notes being at the rate of 8 per cent. per annum from date until paid."

These defendants are described in the mortgage as residents of Cuyahoga county, Ohio. On January 21, 1911, defendants having defaulted in the payment of the first 2 notes described, plaintiff filed his petition in the district court of Washington county, declaring upon these 2 notes, and alleging that no part of same had been paid, except $283.77. The two notes were attached as exhibits to said petition. In the fifth paragraph he alleged the execution of 18 other promissory notes, similar to the ones described, except none of said notes were due. He alleges the execution of said mortgage referred to, covering the property hereinbefore described; that the conditions of said notes and mortgage had been broken, in that defendants had made default in the payment of the notes due December 1, 1910, and January 1, 1911, respective-

ly. Plaintiff further alleges that by the insolvency of said defendants they were not able, and would not be able, to pay said notes or any part thereof, and would not be able to operate said leaseholds or to produce any oil or gas thereon. It is then alleged as follows:

"That there is now due and payable on the two said notes first above described herein, less all credits paid thereon, the sum of $————."

He also prays for appointment of a receiver, and that the court declare all of $20,000 indebtedness due and payable, and that the usual decree of foreclosure be entered against said defendants foreclosing said mortgage.

A summons was issued to the sheriff of Washington county, and his return shows that defendants Sandals and Griffin could not be found in said county. Service was had upon T. L. Bucy, as general manager of defendant the Sterling Oil Company, a corporation. Thereafter affidavit was filed and a notice for publication issued thereon by the clerk. It was published in a newspaper of general circulation in Washington county, directed to defendants Griffin and Sandals, demanding that they appear and answer said petition on the 24th day of March, 1911; otherwise judgment would be entered against them for the sum of $1,764.90, together with 6 per cent. interest thereon, and the further sum of $18,000, with interest thereon at the rate of 6 per cent. per annum from the 1st day of October, 1910, and costs of suit, and that judgment be rendered foreclosing the mortgage, etc.

The defendants Frick-Reid Supply Company, a corporation, and James Taylor appeared and filed their answers and cross-petitions in said cause. Taylor alleged that defendants were indebted to him in the sum of $876.89, together with attorney fee of $100, and claimed a laborer's lien upon said property as security for the payment of said indebtedness, and prayed judgment for said amount, together with foreclosure of his lien. De-

fendant Frick-Reid Supply Company prayed judgment against defendants Griffin and Sandals for the sum of $1,211.11, together with a vendor's lien upon said property, praying that its said lien be foreclosed. There was no summons or notice of publication issued and served upon either of these cross-petitions, and no waiver of service nor any appearance made by defendants Griffin and Sandals. On May 26, 1911, said cause was called for trial. Defendants Griffin and Sandals were adjudged in default, and the petition and cross-petitions were taken as confessed.

It appears from the journal entry that some evidence was heard, and that personal judgment was rendered against defendants Griffin and Sandals, in favor of defendants Taylor and the Frick-Reid Supply Company, for the respective amounts sued for, and said liens were foreclosed upon said property. Personal judgment was rendered in favor of plaintiff in the sum of $6,014.93, which was adjudged to be past-due indebtedness, and for the further sum of $13,678.86 on the 13 notes not due, and a decree foreclosing the mortgage lien, and ordering said property to be sold. On the day the case was called for trial plaintiff filed an amended petition setting up four other causes of action, each upon a promissory note which had matured after the filing of the original petition, constituting a total indebtedness alleged to be due of the amount for which judgment was recovered, to wit, $6,014.93 The amended petition was substantially the same as the original, with the exception of the additional four causes of action; and, as grounds of recovery upon the 13 promissory notes not due, he alleged substantially as follows: That the mortgaged property had been assigned by defendants Griffin and Sandals to defendant Sterling Oil Company, which assignment had not been placed of record; that said attempt to sell was fraudulent and void, and was made for the purpose of depriving plaintiff of his right to said leasehold, and for the purpose of defrauding said plaintiff and the public; that the Sterling Oil Company was insolvent, and that said Griffin and Sandals had been and were insolvent at the

time of the purchase of said property; that they were then under indictment by the federal government, charged with using the mails for fraudulent purposes in connection with advertising and selling stock in said oil company.

The decree was filed by the court on the 7th day of June. Thereafter, on the 13th day of June, 1911, order of sale was issued to the sheriff, directing him to sell said property. Said property was appraised at $22,000, and on the 7th day of August was sold and purchased by plaintiff for the sum of $15,000.

On the 11th day of September, 1911, O. R. Howard, the receiver, filed his report, showing that he had collected in operating said lease the sum of $6,702.24, and that the expense of operating said lease was $1,628.14, leaving a net amount in his hands of $5,074.10. Thereafter, on September 12th, the sale was by the court confirmed.

On February 26, 1912, and after the expiration of the term, defendants Griffin and Sandals and the Sterling Oil Company appeared by their attorney and filed their motion to vacate said judgment, the material grounds of which are substantially as follows: (1) That the notice of publication was void, for the reason there was not sufficient affidavit authorizing the same, and that the summons issued in the first instance was void, for the reason that it did not have the seal of the court attached; (2) that plaintiff's petition filed in said cause did not state a cause of action; (3) that plaintiff's amended petition was unauthorized and substantially changed his cause of action; (4) that the action was prematurely brought, and the court was unauthorized to render judgment upon the notes not matured; (5) plaintiff had no authority to maintain the suit; (6) that neither of said defendants was served with any process, as required by law; (7) that the court was misled as to the law and the facts, and was induced to sign an erroneous and void decree; (8) that the appointment of plaintiff as administrator was nugatory and void;

(9) for the reason that there was no equity in the proceedings instituted by plaintiff; that they were unjust, unconscionable, and contrary to good conscience, rules of equity, etc.

After notice this motion came on for hearing, which was by the court in all things overruled, and exceptions saved. From this order of the court denying said motion to vacate, defendants prosecute error to this court, and we set out the assignments of error deemed material to be considered, which are substantially as follows: (1) That the petition of the plaintiff did not state facts sufficient to constitute a cause of action; (2) that the affidavit for publication filed was insufficient, defective, and contrary to the statutes, and was void; (3) the notice of publication was void because no sufficient affidavit for publication was filed, and was not issued in "the name or by the authority of the state of Oklahoma," as required by law and section 19, art. 8, of the Constitution, and the statutes pertaining thereto; (4) said judgment was void, and the trial court was without jurisdiction of the subject-matter or of the parties to the action; (5) the court erred in not rendering judgment upon the motions of defendants vacating and holding for naught said judgment, that it was without jurisdiction to render said judgment, and that all the proceedings had in relation thereto were erroneous, and that said judgment was void.

There are three questions raised on this record for our determination: (1) Was the affidavit for warranting order fatally defective? (2) Did defendants, through their counsel, make a general appearance, which had the effect to waive notice or service of summons? (3) Did the court commit reversible error in overruling the motion to vacate said judgment?

The affidavit for publication was unquestionably void. The affidavit fails to set out the facts showing due diligence, and comes within the rule laid down by this court in the case of *Nicoll et ux. v. Midland Sav. & Loan Co.*, 21 Okla. 591, 96 Pac. 744; *Nicholson et al. v. Midland Sav. & Loan Co.*, 21 Okla. 598, 96 Pac. 747;

*Cordray v. Cordray,* 19 Okla. 36, 91 Pac. 781; *Romig et al. v. Gillett,* 10 Okla. 186, 62 Pac. 805.

It is not seriously contended that the affidavit and notice of publication based thereon were insufficient to give the court jurisdiction over defendants Griffin and Sandals and the Sterling Oil Company, but it is most earnestly urged that by filing the motion to vacate the judgment, defendants made a general appearance, and thereby submitted themselves to the jurisdiction of the court, which had the effect to validate the judgment rendered. We are of the opinion that this contention must be upheld, in so far as it relates to the question of the invalidity of said judgment by reason of lack of jurisdiction over the person of defendants. *Nichols & Shepard Co. v. Baker,* 13 Okla. 1, 73 Pac. 302; *Rogers v. McCord-Collins Mer. Co.,* 19 Okla. 115, 91 Pac. 864; *Lookabaugh v. Epperson,* 28 Okla. 472, 114 Pac. 738; *Trugeon et al. v. Gallamore,* 28 Okla. 73, 117 Pac. 797; *Welch v. Ladd,* 29 Okla. 93, 116 Pac. 573; *Pratt v. Pratt,* 41 Okla. 577, 139 Pac. 261; *Ziska v. Avey et al.,* 36 Okla. 405, 122 Pac. 722; *Walton et al. v. Kennamer et al.,* 39 Okla. 629, 136 Pac. 584; *Willett et al. v. Blake et al.,* 39 Okla. 261, 134 Pac. 1109. These cases hold, in effect, that where a judgment is rendered without service or notice to defendants, who thereafter file a motion to vacate the same, alleging both jurisdictional and nonjurisdictional grounds, thereby making a general appearance, the effect of which waives all defects in the citation or notice, and cures any defect in the judgment existing by reason of lack of service of summons or other notice. The reason of the rule is that a person should not be permitted to challenge the jurisdiction of the court over him, and at the same time invoke its jurisdiction by asking relief. Assuming that defendants, in filing their motion to vacate the judgment, alleged both jurisdictional as well as nonjurisdictional grounds, thus making a general appearance, under the foregoing authorities they must be held to have waived jurisdiction over their person.

Defendants filed their motion under section 5274, Rev. Laws, 1910. The latter part of said section provides:

"A void judgment may be vacated at any time, on motion of a party, or any person affected thereby."

The question arises: The court having denied this motion, and assuming defendants made a general appearance, waiving service of process or other notice, did the trial court abuse its discretion in denying the motion? It seems that this question has never been directly passed upon by this court, although it has been referred to, and the authority of this court to consider certain defects in the proceeding with a view of ascertaining, if prejudicial error, requiring a reversal, has been inferentially sustained. The rule established by this court, following the decisions of the Supreme Court of Kansas in holding that a general appearance, after rendition of judgment, has the effect to validate a void judgment, often results in hardships, and, in effect, a denial of justice, and should not be extended beyond the reason of such rule. It has been said that a judgment which is void for want of service is no judgment at all; and to hold that after a judgment in form only has been entered against a party, which in fact and in law is no judgment, by his appearance in an effort to relieve himself from such judgment which is apparently valid, but which in fact is void, is carrying the rule of estoppel and waiver to the extreme. Not only have defendants never had their day in court, but they have had no opportunity to have it, and without any fault on their part. If they have done nothing to forfeit their constitutional rights of a hearing, the right to appear and defend, other than to waive the jurisdiction of the court over their person in an effort to secure their legal rights in an orderly manner, and if irregularities appear upon the face of the record affecting their substantial rights, what valid reason can be assigned why they should not now be allowed their day in court? We are told that, although this judgment was void prior to defendants' appearance, yet by appearing and on account of their indiscretion in challenging

the judgment as inequitable, as well as on the grounds of juris-
diction of the court, they have waived all irregularities and errors,
and are now estopped from raising any questions, other than juris-
dictional; that it matters not how unjust and inequitable the
judgment may be notwithstanding the trial court may have gross-
ly misconceived its authority and duty, and by reason whereof
prejudiical error is obvious, yet the court is not warranted in
granting relief. We are unwilling to subscribe to this doctrine.
If it be true that there is no express statutory authority warrant-
ing the court to grant relief, we believe in the interest of justice
this court would have the inherent power under the constitutional
grant of supervisory control over the inferior courts in enforcing
that great principle of equity that, where there is a wrong, there
is also a remedy. But we need not go to this extent, for we
have both authority and precedent, based upon reason and justice,
not only warranting, but impelling, action. The rule is stated
in volume 2, Encyc. Pl. & Pr., pp. 654, 655:

"But where a defendant against whom judgment has passed,
but who was in no matter served with process, comes into court,
and asks to have that judgment set aside by reason of such want
of service, *and also for other alleged irregularities connected there-
with,* by asking the court to investigate such other irregularities,
he submits himself to the jurisdiction of the court, and can no
longer be heard to say that the court has no jurisdiction of his
person." And "if, *upon investigation, the court finds that such
irregularities do not exist, and refuses to set aside the judgment,*
the defendant is forever bound by such rulings, unless reversed
in a higher court"—citing *Yorke v. Yorke,* 3 N. D. 349, 55 N. W.
1098. (Italics ours.)

This court, in the case of *Lookabaugh v. Epperson, supra,*
in an opinion by Justice Hayes, states:

"Plaintiff in error, with permission of the court after the
submission of this case, was permitted to file a supplemental brief,
in which he urges for the first time that the judgment of default
should not be permitted to stand, because the petition of defend-
ant in error fails to state a cause of action. This is an appeal

taken from an order overruling· a motion to vacate and set aside the default judgment upon grounds stated in the motion, neither of which grounds is that the allegations of the petition were insufficient to state a cause of action. The petition in error contains no assignment challenging the insufficiency of said petition, and, since its insufficiency was not challenged in the motion to vacate and set aside, that ground of reversal is not properly before this court for consideration; but we have examined the petition, and find that, while some of the allegations are of a general nature, and might be vulnerable to a motion to make more definite and certain, they are sufficient to sustain the judgment." *Willett v. Blake, supra; Shankollzer v. Thompson et al.,* 24 Okla. 198, 103 Pac. 595, 138 Am. St. Rep. 877, 19 Ann. Cas. 1188; *Ziska v. Avery et al., supra.*

In the case of *Ozark Marble Co. v. Still,* 24 Okla. 559, 103 Pac. 586, this court said:

"It is urged by the plaintiff that defendant was not entitled to have the default judgment set aside upon his motion, for the reason that he failed to show therein that he had a valid defense. It is unnecessary for us to examine the allegations of defendant's motion as to the facts constituting his defence to ascertain whether or not such facts constitute a good defense; for a judgment taken by default against a defendant who has not been served and who has not' entered an appearance may be set aside by defendant without showing that he has a valid defense. *Hanson· v. Wolcott,* 19 Kan. 207."

While in the last case, *supra,* the court did not decide the question of general appearance, yet it would appear from the statement the defendant in his motion alleged a defense which may be held to reasonably bring him within the rule of making a general appearance.

We are of the opinion from the foregoing authorities that the rule supported by reason is that, when a motion to vacate a judgment under section 5274, Rev. Laws 1910, is filed, and the party's motion alleges jurisdictional as well as nonjurisdictional grounds, he thereby makes a general appearance and waives juris-

diction over his person. Notwithstanding this fact, it is the duty
of the court to investigate and ascertain whether or not the pro-
ceedings resulting in the judgment and the judgment itself are
so irregular that they would be held to be fatal upon appeal
direct from the judgment, and that in case injustice has been
done, and it is clear the judgment is inequitable, it should be
vacated, to the end that the controversy may be heard upon the
merits in the interest of justice. Upon a petition in error to this
court from the action of the trial court denying such motion to
vacate, if it clearly appears that the proceedings of the trial court
and the judgment are irregular to the extent that the defects
would be held to be fatal upon an appeal from such judgment, or
that the judgment is clearly unjust and inequitable by reason of
such irregularities, the order of the trial court denying such mo-
tion will be held reversible error, and the cause reversed.

The question arises: Are the irregularities in the proceeding
and judgment before us such as would require a reversal of the
cause; or does the judgment, if it were here on appeal direct from
the judgment of the trial court, by reason of the irregularities,
appear to be unjust or clearly inequitable? It will be noticed
that this suit was instituted after two of the notes of $1,000 each
only had matured; that at the time of judgment four other notes
had matured. In the original petition filed by plaintiff, he alleges
there "was due him $———," and prayed judgment for "$———."
While it is questionable, yet we may assume that this petition stat-
ed a good cause of action on the two first notes which had ma-
tured; but the petition did not state a cause of action on the 18
notes immatured, or upon the mortgage, as against a general
demurrer. It is stated, however, that an amended petition was
filed wherein these defects were cured. It is true an amended
petition was filed alleging four other separate and distinct causes
of action in addition to those set up in the first petition; and
while defendants, by their appearance in the manner stated, waived
notice of the filing of said amended petition, they did not waive

any other inherent defect in the proceedings. In the amended petition plaintiff added four new causes of action, and sought to allege a cause of action upon the 13 notes which were not due and a right to foreclose the mortgage, by alleging that after the notes and mortgage were · executed defendants assigned the property upon which plaintiff held the mortgage lien with intent to defraud plaintiff, and prayed that the court declare those notes due. This was not within the power of the court to do. The court could only enforce the contract as made; and clearly the judgment upon these 13 notes for the sum of $13,000, with interest, was unauthorized, and the petition was insufficient to support such a judgment. Jones on Mortgages, secs. 1590, 1591; *Lewis v. Fox et al.,* 122 Cal. 244, 54 Pac. 823; *King v. Longworth,* 7 Ohio 231, pt. 2. If an appeal had been prosecuted direct from such judgment, a reversal would be required. We are further of the opinion that there was no cause of action stated authorizing the court to enter the decree foreclosing the mortgage lien. There was no provision in the mortgage accelerating the maturity of the notes by reason of default in the payment of one or more of said notes. There was no breach of any condition of the mortgage alleged in either the original or amended petition. Thus a judgment foreclosing the mortgage was unauthorized, and constitutes such an irregularity that would require a reversal upon appeal direct from said judgment. The law applicable is well settled. In 27 Cyc. 1521, referring to maturity of debt, it is said:

"But, if the mortgage or note fixes a certain future date as the time for its payment, there can be no legal default, and consequently no right to foreclose, before the maturity of the debt as thus fixed."

Page 1522, *Id.*:

"A provision in a mortgage giving the mortgagee the right to declare and treat the entire amount secured as immediately due and payable upon default in the payment of any installment or of interest or taxes due is not in the nature of a penalty or forfeiture, but is a valid and enforceable contract, against which

equity will not relieve the delinquent mortgagor in the absence of circumstances showing peculiar hardship or oppression, or the taking of an unconscionable advantage. A provision of this kind enables the mortgagee to sue for and obtain a foreclosure, not merely for the installment or interest in arrears, but for the entire amount of the debt, although without such covenant it would not yet be due or payable"—citing *Mooney v. Tyler,* 68 Ark. 314, 57 S. W. 1105; *Phelps v. Mayers,* 126 Cal. 549, 58 Pac. 1048; *Rasmussen v. Levin,* 28 Colo. 448, 65 Pac. 94; *Gray v. Robertson,* 174 Ill. 242, 51 N. E. 248.

In *Brokaw v. Field,* 33 Ill. App. 138, it is held that a provision that on default in the payment of any installment of interest it shall be lawful to sell the mortgaged premises does not make the entire debt due on such default. See, also, *Rumsey v. People's R. Co.,* 154 Mo. 215, 55 S. W. 615; *Nat. L. Ins. Co. v. Butler,* 61 Neb. 449, 85 N. W. 437, 87 Am. St. Rep. 462; *Arkenburgh v. Lakeside Residence Ass'n.,* 56 N. J. Eq. 102, 38 Atl. 297; *New York City Baptist Mission Soc. v. Tabernacle Baptist Church,* 17 Misc. Rep. 699, 41 N. Y. Supp. 513; *Oaks v. Fisher,* 20 Pa. Co. Ct. R. 74; *Noonan v. Braley,* 2 Black. 499, 17 L. Ed. 278; *Richards v. Holmes,* 18 How. 143, 15 L. Ed. 304; *Gregory v. Marks,* Fed. Cas. No. 5802; *Little Rock Water Works Co. v. Barrett,* 103 U. S. 516, 26 L. Ed. 523.

In *Pomeroy v. Woodward,* 38 Or. 212, 63 Pac. 194, it was held that a provision in a mortgage authorizing foreclosure on default "in payment of principal or interest," does not authorize foreclosure for the whole debt on default in the payment of one installment of the principal, as such a provision does not amount to an agreement that the whole debt shall become due on default of an installment.

Speaking of the necessary allegations entitling a mortgage to foreclose, 27 Cyc. 1594, 1595, states:

"The bill or complaint will not support a decree of foreclosure unless it states definitely the amount presently claimed to be due

under the mortgage. \* \* \* And, if the suit is brought under a provision of the mortgage allowing the creditor to declare the entire indebtedness due on default in the payment of an installment of interest or principal, the bill must allege the default relied on and plead the conditions giving an immediate right of action for the whole, including the mortgagee's election to anticipate the maturity of the principal indebtedness"—citing *Savannah, etc., R. Co. v. Lancaster,* 62 Ala. 555; *Fletcher v. Dennison,* 101 Cal. 292, 35 Pac. 868; *Barney v. McClancy,* 15 Colo. App. 63, 60 Pac. 948; *White v .Gracey,* 45 Fla. 657, 34 South. 223; *Broadbent v. Brumback,* 2 Idaho (Hasb.) 366, 16 Pac. 555; *Heffron v. Gage,* 149 Ill. 182, 36 N. E. 569; *Wheeler v. Foster,* 82 Ill. App. 153; *Kohli v. Hall,* 141 Ind. 411, 40 N. E. 1060. *Caplice Commercial Co. v. Cassidy,* 25 Mont. 81, 63 Pac. 799; *Bodine v. Gray,* 24 N. J. Eq. 335; *Cincinnati Hotel Co. v. Central Trust, etc., Co.,* 11 Ohio Dec. 255; *Briscoe v. Philadelphia, etc., R. Co.,* 1 Walk. (Pa.) 511; *Robertson v. Parrish* (Tex. Civ. App.) 39 S. W. 646; *Alabama, etc., Mfg. Co. v. Robinson,* 56 Fed. 690, 6 C. C. A. 79; *Patten v. Hotel Co.,* 153 Cal. 460, 96 Pac. 296; *Benson v. Reinshagen,* 75 N. J. Eq. 358, 72 Atl. 954; *Baxter v. Ft. Payne Co.,* 182 Ala. 249, 62 South. 42.

In this jurisdiction, that a defect in the nature of the one we are considering will be considered for the first time on appeal is no longer an open question. It was said in the case of *International Harvester Co. v. Cameron,* 25 Okla. 256, 105 Pac. 189:

"If the judgment would have been arrested on motion if made because the petition did not state facts sufficient to constitute a cause of action, it may be reversed for the same reason upon a proceeding in error."

In *Clark v. Holmes,* 31 Okla. 164, 120 Pac. 642, Ann. Cas. 1913D, 385, this court said in the syllabus:

"A judgment by default upon a complaint that does not state facts sufficient to constitute a cause of action is void, and will be reversed on appeal."

See, also, *Lewis v. Clements,* 21 Okla. 167, 95 Pac. 769.

Counsel undertake to defend the right to foreclose said mort-

gage at the time it was foreclosed in this instance under section 4016, Rev. Laws 1910, which section reads:

"Every instrument substantially the same as the above shall be deemed a good and valid mortgage, with all contracts and covenants essential to protect the rights of the holder thereof; but any further lawful contract embodied therein shall be binding upon the parties thereto; and when the words, 'and waive the appraisement,' are written or printed therein, the premises mortgaged must be sold without appraisement, in case of foreclosure and sale thereunder, and in such case no order for such sale shall issue for six months after the date of judgment."

They contend that the part of this section which reads "shall be deemed a good and valid mortgage, with all contracts and covenants essential to protect the rights of the holder thereof," warrants the court in reading into a mortgage which is written in words substantially as used in the form prescribed by statute such other provisions or agreements as may afterwards appear to the mortgagee or to the court to have been necessary for the protection of the mortgagee; or, to make a specific application of counsel's contention to the present case, that the court should read into this mortgage a further agreement that, when default is made in the payment of any one of said notes or interest thereon, the whole shall become due, and the mortgagee authorized to proceed to forclose said mortgage. Whatever section 4016, *supra,* may mean, we are clearly of the opinion that this is not a sound construction, or in harmony with the legislative intent. If it can be so construed in this instance, and this provision read into the mortgage, then the court would be justified in every case, where it appeared necessary in order to fully protect and give the mortgagee complete relief, to read some additional provision in the mortgage more favorable to the mortgagee. It appears to us that a more reasonable and sound construction of this statute would be to hold that, when a mortgage is executed substantially in the form set out in the statute, it shall be deemed a good and valid mortgage, and shall carry with it all the rights to which the mort-

Form 11.

gagee is entitled under the law, to be construed in connection with any contracts and covenants existing between the parties made in connection with said mortgage, whether incorporated therein or not. Also the law will imply a right to foreclose when any express provision of the mortgage is breached, although no agreement in the mortgage provides for such foreclosure. By the language, "but further lawful contracts embodied therein shall be binding upon the parties thereto," it is clear to our minds that this section does not mean what counsel construe it to mean. Otherwise this last quotation from the statute would be surplusage. If counsel's contention is sustained, then when any case is presented to the court, and it appears that, in order to give the mortgagee complete protection, including both rights and remedies, and other agreements between the parties should have been made, the court is authorized to incorporate them into the mortgage. Counsel for plaintiff, at page 15 of their brief, say:

"We think the purpose of the Legislature was to provide a short form of mortgage which should be equal, at least, to that which is ordinarily used."

The form ordinarily used has many special stipulations in behalf of the mortgagee, but they are made by the parties, and not by the courts. Even the Legislature never attempted to extend the rule so far as to make contracts for the parties. The case of *Black v. Reno et al.* (C. C.) 59 Fed. 917, relied on by counsel for plaintiff, is not in point, in that the provisions of the morgtage there involved were essentially different from the mortgage in the instant case. There can be no doubt, in any given case where a right of action has accrued under the mortgage, of the authority of a court of equity to decree a sale of the whole property, where it is not divisible, for the purpose of conserving the best interests of all concerned. Counsel cite and quote from many cases to the effect that, since the term at which the judgment was rendered had expired, the judgment became final, and it was beyond control of the court, and that it can only be vacated

in the manner provided by statute. We have no doubt that defendants filed their motion under section 5274, Rev. Laws 1910, which provides for the vacation of a void judgment, and permits the motion to be filed at any time and without alleging any reason other than the fact that the judgment is void, and were not required to allege any meritorious defense. This section of the statute is a part of the chapter authorizing the district court to vacate or modify its own judgments at or after the term at which said judgments or orders were made. Defendants' third and fourth grounds set out in their motion to vacate, in our judgment, bring their motion reasonably within the third subdivision of said section 5267, to wit: "Irregularity in Obtaining a Judgment or Order." If the judgment had not been void, but only voidable, defendants would have been required in addition to showing reasonable grounds for vacating the judgment, to allege a meritorious defense. But, since the judgment was void, they were not required to make this showing. By relying upon nonjurisdictional grounds, however, they waived only the jurisdiction over their person. Such rights as they may have had for vacating the judgment, had personal service been secured, they would still retain. This would include the right to have the judgment vacated if the petition failed to state a cause of action, or if plaintiff sought to recover upon more than one cause of action, and failed to state facts entitling him to recover upon any separate cause of action, and judgment rendered thereon would entitle them to have the judgment vacated upon such cause of action. Or, if it appeared from the pleadings and the face of the judgment roll that the cause of action sounded in tort, and there was no evidence introduced showing the amount of damages, the judgment would be erroneous and subject to be vacated upon proper motion filed therefor. Many other illustrations might be mentioned, in which, if it was clearly shown from the pleadings and judgment roll that the judgment was not only grossly erroneous, but manifestly unjust and inequitable, defendant, having had no citation or notice

of the proceeding, preventing him from having his day in court, although making a general appearance after judgment, would be entitled to have such judgment vacated. To hold otherwise would, in effect, be denying a party due process of law. It is the highest aim of all governments to promote happiness, to protect personal and property rights, and to administer exact justice. To this end courts of justice are established. If in instances of the kind now before us, where it appears a gross injustice has been done by reason of defendants having had no day in court, without their fault, and if they are to be denied a hearing solely on the ground that they inadvertently attempted to appeal to the conscience of the court by showing equitable reasons why they should be given relief, then it seems the courts have failed in one of their important missions.

In reversing this case, it will not materially affect the rights of plaintiff. All rights to which plaintiff is entitled is the amount of his debt, costs, and interest. While there were allegations made in the petitions that defendants were insolvent and would never be able to pay the indebtedness, yet the report of the receiver shows that this property was producing a net income of about $750 per month—practically enough to pay off the indebtedness as it matured. We are of the opinion that the petition failed to state a cause of action as to all the notes, except the first two notes sued on, amounting to $1,784.90, and, had plaintiff taken a separate judgment for this amount, that part of the judgment would be affirmed. But, in that these two causes of action and the fourth additional cause of action were included in the judgment, it is necessary to reverse the entire judgment.

We cannot agree that the filing of the amended petition cured the defects in the original petition. The filing of this amendment in their absence would be such an irregularity, even had defendants had legal notice, as would require the vacation of the judgment upon timely application. It would be a dangerous doctrine, indeed, to hold that after a party was cited to appear in court

to answer a certain cause of action, and if defendant made default for the reason he desired to confess such cause or causes of action, for the court to permit plaintiff to amend and add other causes of action which defendant might desire to contest, and such rule is not justified, either upon principal or reason.

Mr. Wilsie, in his work on Mortgage Foreclosure (secion 335), states:

"The plaintiff in a suit to foreclose a mortgage can recover upon default only on the cause stated in his complaint or bill"— citing *Simonson v. Blake*, 12 Abb. Pr. (N. Y.) 331; *Shoaf v. Joray*, 86 Ind. 70; *Knowles v. Rablin*, 20 Iowa, 101; *Hansford v. Holdam*, 14 Bush (Ky.) 210; *Converse v. Blumrich*, 14 Mich. 109, 90 Am. Dec. 230; *Williams v. Creswell et al.*, 51 Miss. 817.

There is no contention that any appearance was made, so far as relates to the cross-petitions or the judgments rendered thereon; neither is it contended that there was any summons served or notice of any kind given to defendants on said cross-petitions.

The order of the court denying the motion to vacate is reversed, with directions to set aside the judgment rendered, both as to the plaintiff and the cross-petitioners, and permit defendants to plead and proceed in such manner not inconsistent with this opinion.

All the Justices concur, except KANE, C. J., absent, and not participating.